United States Bankruptcy Court
Southern District of Texas

**ENTERED**

September 22, 2023

Nathan Ochsner, Clerk

## IN THE UNITED STATED BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 23-70001** |
| **M.A.R. DESIGNS & CONSTRUCTION,** | § | |
| **INC.,** | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | **CHAPTER 11** |

### <u>MEMORANDUM OPINION</u>

In this subchapter V proceeding, M.A.R. Designs & Construction, Inc. proposed a liquidating plan in which the Debtor would remove itself as debtor in possession under 11 U.S.C. § 1185 and appoint the subchapter V trustee to act simultaneously as the disbursing agent under 11 U.S.C. § 1191(b) and liquidating trustee under the plan. In response, Sierra Title of Hidalgo County, Inc., Comack Investments, LLC, Copesa LLC, Carolos Lozano Gonzalez, Adrian Gonzalez, Kelvin Construction LLC, and the United States Trustee have all filed objections to confirmation. Additionally, the United States Trustee has filed a motion to convert the case to Chapter 7 and Comack Investments, LLC has filed its own expedited motion to convert to Chapter 7 or in the alternative, dismissal with prejudice. On June 15, 2023, the Court conducted an initial hearing. On July 31, 2023, and on August 3, 2023, the Court held a final hearing on confirmation and the motions to convert or dismiss. For the reasons stated herein, this Court (1) grants the "Motion of the United States Trustee to Convert Case"; (2) grants "Comack Investments, LLC's Expedited Motion To Dismiss With Prejudice Or Convert"; (3) denies confirmation of Debtor's plan as moot and overrules all objections to Debtor's plan as moot.

# I.      BACKGROUND

1.      On January 1, 2023, (the "*Petition Date*") M.A.R. Designs & Construction, Inc. ("*Debtor*") filed for bankruptcy protection under Title 11 of the Bankruptcy Code[1] initiating the bankruptcy case ("*Bankruptcy case*"). The Debtor's president and sole shareholder is Mario Rodriguez ("*Mr. Rodriguez*").[2]

2.      On January 25, 2023, the Debtor filed an Amended Voluntary Petition to elect to proceed under Subchapter V of Chapter 11.[3]

3.      On January 31, 2023, Brendon Singh was appointed as the Subchapter V Trustee[4] ("*Subchapter V Trustee*").

4.      On February 9, 2023, the Court held its initial status conference and entered an Order instructing Debtor to, among other things, "provide proof of insurance of all assets to the UST listing the UST as a party of notice," and to file its plan no later than April 3, 2023.[5]

5.      On April 3, 2023, Debtor timely filed its plan of reorganization[6] ("*Plan*").

6.      On April 17, 18, and 21, 2023, 5 objections ("*Objections*") were filed by Alejandro Moreno, Sierra Title of Hidalgo County, Inc. ("*Sierra Title*"), Nicolas Gomez, Daniel Cuevas, and Maria Cuevas,[7] in opposition to the Plan.

7.      On April 24, 2023, Debtor modified its Plan[8] ("*First Amended Plan*") to address some of the Objections.

8.      On April 25, 2023, additional objections were filed by Comack Investments, LP, and Title Resources Guaranty Company ("*Objections to the First Amended Plan*"), in opposition to the First Amended Plan.[9]

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.
[2] ECF No.1 p. 4.
[3] ECF No. 27.
[4] ECF No. 32.
[5] ECF No. 46.
[6] ECF No. 148.
[7] *See e.g.* ECF Nos. 167, 168, 177, 178, and 179.
[8] ECF No. 182.
[9] *See e.g.* ECF Nos. 183-186.

9.      On April 30, 2023, Debtor filed its Second Amended Plan, (*"Second Amended Plan"*)[10] to address some the Objections to the First Amended Plan.

10.     On May 1, 2023, additional objections were filed by Comack Investments, LP, and the United States Trustee (*"Objections to the Second Amended Plan"*), in opposition to the Second Amended Plan.[11]

11.     On May 8, 2023, Comack Investments, LLC ("*Comack*") filed a secured proof of claim in the amount of $360,689.34[12] ("*Comack POC*").

12.     On May 19, 2023, Debtor filed its Third Amended Plan[13] ("*Third Amended Plan*"), to address some of the Objections to the Second Amended Plan.

13.     On June 7, and 8, 2023, John King, Sierra Title, Maria Cuevas, Daniel Cuevas, and Nicolas Gomez, filed objections in opposition to the Third Amended Plan[14] ("*Objections to the Third Amended Plan*")

14.     On June 9, 2023, the United States Trustee ("*UST*") filed its "Objection Of The United States Trustee ("*UST*") To Debtor's Amended Plan Of Reorganization Dated May 19, 2023"[15] ("*UST's Objection*").

15.     On June 12, 2023, Debtor filed its Fourth Amended Plan[16] ("*Fourth Amended Plan*").

16.     On June 15, 2023, UST filed its "Motion to Convert Case from Chapter 11 to Chapter 7"[17] ("*UST Motion to Convert*").

17.     On June 15, 2023, the Court held an initial hearing on the Fourth Amended Plan[18]

18.     On June 29, 2023, Debtor filed its Fifth Amended Plan[19] ("*Fifth Amended Plan*"). The Fifth Amended Plan proposes: (1) removing the debtor-in-possession, (2) liquidating the estate with use of a liquidating trust, (3) the Subchapter V Trustee serving as both the Subchapter V trustee and the liquidating trustee, (4) and lists Chapter 5 causes of action for the trustee to pursue against Mayberry Crossing LLC, Mario Rodriguez, Brenda Gonzales, and Toldos, LLC[20] ("*Causes of Action*").

---

[10] ECF No. 210.
[11] *See e.g.* ECF Nos. 214 and 227.
[12] Claim No. 28-1.
[13] ECF No. 242.
[14] *See e.g.* ECF Nos. 248-254, 257-263.
[15] ECF No. 259.
[16] ECF No. 268.
[17] ECF No. 280.
[18] June 15, 2023 Min. Entry.
[19] ECF No. 300.
[20] ECF No. 300 p. 8.

19.    On July 10, 2023, Sierra Title filed its "Sierra Title Of Hidalgo County, Inc. and John King, Trustee's Objection To Confirmation Of Third Amended Chapter 11 Plan (Relates To ECF #300)"[21] ("*Sierra Title Plan Objection*").

20.    On July 13, 2023, Comack filed its "Comack Investments, LLC's Expedited Motion To Dismiss With Prejudice Or Convert" ("*Comack's Motion to Convert or Dismiss*").[22]

21.    On July 17, 2023, Comack filed its "Comack Investments, LLC's Objection To Confirmation Of Third Amended Chapter 11 Plan [Doc #300]" ("*Comack's Objection*").[23]

22.    On July 20, 2023, Copesa LLC, Carolos Lozano Gonzalez, Adrian Gonzalez, and Kelvin Construction LLC filed objections to the Fifth Amended Plan[24] ("*Objections to the Fifth Amended Plan*").

23.    On July 20, 2023, the UST filed its "Supplemental Objection Of The United States Trustee To Debtor's Amended Plan Of Liquidation Dated June 29, 2023".[25] ("*UST Supplemental Objection*").

24.    On July 26, 2023, Debtor filed its "Response to UST's Motion to Convert Case."[26]

25.    On July 27, 2023, Debtor filed its "Response to Comack Investments, LLC's Expedited Motion to Dismiss With Prejudice Or Convert."[27]

26.    On July 31, 2023, and August 3, 2023, the Court held a hearing on the Fifth Amended Plan,[28] (collectively, "*Hearing*") now issues its instant Memorandum Opinion.

## II.    JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11," and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[29] Section 157

---

[21] ECF No. 308.
[22] ECF No. 310.
[23] ECF No. 314.
[24] ECF No. 319-322.
[25] ECF No. 324.
[26] ECF No. 337.
[27] ECF No. 345.
[28] July 31, 2023 Min. Entry.
[29] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).

allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[30] This court determines that pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O) this proceeding contains core matters, as it primarily involves proceedings concerning confirmation of a plan and administration of this estate.[31] This proceeding is also core under the general "catch-all" language because confirmation of a Chapter 11 plan and a motion to convert or dismiss are proceedings that can only arise in the context of a bankruptcy case.[32]

This Court may only hear a case in which venue is proper.[33] 28 U.S.C. § 1408 provides that "a case under title 11 may be commenced in the district court for the district— in which the domicile, residence, [or] principal place of business…have been located for one hundred and eighty days immediately preceding such commencement." Debtor's principal place of business was in McAllen, Texas 180 days immediately preceding the Petition Date, and therefore, venue of this proceeding is proper.[34]

This Court must evaluate whether it has constitutional authority to enter a final order in this case. While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[35] Here, the confirmation of a plan and conversion of a bankruptcy case are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O). Accordingly, this Court concludes that the narrow limitation

---

[30] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[31] *See* 11 U.S.C. § 157(b)(2)(A)(L) & (O).
[32] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).
[33] 28 U.S.C. § 1408.
[34] ECF No. 1.
[35] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

imposed by *Stern* does not prohibit this Court from entering a final order here.[36] Alternatively, this Court has constitutional authority to enter a final order because all parties in interest have consented, impliedly if not explicitly, to adjudication of this dispute by this Court.[37] None of these parties has ever objected to this Court's constitutional authority to enter a final order or judgment. These circumstances unquestionably constitute implied consent. Thus, this Court wields the constitutional authority to enter a final order here.[38]

### III.   ANALYSIS

Pending before the Court are three matters: (B) UST's Motion to Convert, (C) Comack's Motion to Dismiss or Convert, (D) confirmation of Debtor's Fifth Amended Plan and Objections filed in Opposition to Debtor's Fifth Amended Plan.  The Court will consider each in turn.

### A.  Standard to Convert or Dismiss Under 11 U.S.C. § 1112(b)

Section 1112(b)(1) states that the court *shall* dismiss or convert a chapter 11 case for cause, whichever is in the best interest of creditors and the estate, unless the court determines that the appointment of a trustee or an examiner under § 1104 is in the best interests of the estate.[39] Because § 1104 does not apply in a subchapter V case,[40] this Court has no power to appoint a chapter 11 trustee or an examiner in this case. Therefore, this Court is restricted to converting or dismissing this case under § 1112(b).

---

[36] See, e.g., *Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); see also *Tanguy v. West (In re Davis),* No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend *Stern's* limited holding herein.") (Citing *Stern*, 564 U.S. at 475, 503, 131 S.Ct. 2594).
[37] *Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S.655, 135 S. Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) ("*Sharif* contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").
[38] *See In re Ozcelebi*, 639 B.R. 365 (Bankr. S.D. Tex. 2022).
[39] 11 U.S.C. § 1112(b)(1).
[40] *Id.*; § 1181(a) (stating that 11 U.S.C. § 1104 does not apply in a case under subchapter V).

The Code defines "cause" for purposes of § 1112(b) with a non-exhaustive enumerated list including, in pertinent part: (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (B) gross mismanagement of the estate; (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public; (E) failure to comply with an order of the court; (H) failure timely to provide information or attend meetings reasonably requested by the United States Trustee; and (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court.[41] Although section 1112(b)(4) does not specifically enumerate bad-faith conduct as cause for conversion, "[b]ankruptcy courts nevertheless routinely treat dismissal for … bad-faith conduct as implicitly authorized by the words for cause."[42]  Regardless of the basis for cause, "inquiry under § 1112 is case-specific, focusing on the circumstances of each debtor."[43]

The moving party bears the burden of proving cause by a preponderance of the evidence.[44] Even if this Court finds cause, however, this Court must abstain from converting the case to chapter 7 if "the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate" and the debtor or another party in interest establishes: (1) that there is a reasonable likelihood of plan confirmation; and (2) that the grounds for converting or dismissing the case include an act or omission of the debtor other than under § 1112(b)(4)(A).[45]

The Court will now consider UST's Motion to Convert.

---

[41] 11 U.S.C. § 1112(b)(4)(A), (B), (C), (E), (H), (J).
[42] *In re Zamora-Quezada*, 622 B.R. 865, 879 (Bankr. S.D. Tex. 2017) (citing *Marrama v. Citizens Bank*, 549 U.S. 365, n.1, 373 (2007)). *See In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986) ("Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings.").
[43] *In re Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d 363, 371-72 (5th Cir. 1987).
[44] *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir.1994).
[45] 11 U.S.C. § 1112(b)(2).

**B.  UST's Motion to Convert**

The UST argues that cause exists to convert Debtor's Bankruptcy Case to chapter 7 pursuant to §§ 1112(b)(4)(A), (B), (C), (E), (H) and (J). The Court will consider each in turn.

### 1.  Whether cause exists to convert under § 1112(b)(4)(A)

First, UST argues that causes exists to convert pursuant to § 1112(b)(4)(A).[46] To establish cause under § 1112(b)(4)(A), the moving party must show that there is both (a) a substantial or continuing loss to or diminution of the estate and (b) the absence of a reasonable likelihood of rehabilitation.[47] The loss may be substantial or continuing; it need not be both.[48] If the loss is sufficiently large given the financial circumstances of the debtor as to materially negatively impact the bankruptcy estate an interest of creditors, the loss is substantial.[49]  The Court will consider each factor in turn.

### a.  Whether there is a substantial or continuing loss to or diminution of the estate

When examining the movant's evidence for loss or diminution, courts must look beyond a debtor's financial statements and make a full evaluation of the present condition of the estate.[50] The situation presented to the court may be tolerable under the circumstances, but the loss or diminution "should not continue . . . beyond the point at which reorganization no longer remains realistic."[51] The alleged loss can either be "sufficiently large given the financial circumstances of the debtor as to materially negatively impact the bankruptcy estate and interest of the creditors" or can be an ongoing issue, such as negative cash flow.[52] Post petition administrative expenses and

---

[46] ECF No. 280 p. 8.
[47] *In re Creekside Sr. Apartments, L.P.*, 489 B.R. 51, 61 (B.A.P. 6th Cir. 2013).
[48] *Id.* ("The loss may be substantial or continuing. It need not be both in order to constitute cause under § 1112(b)(4)(A).") (citing Collier ¶ 1112.04[6][a][i]).
[49] *In re Ozcelebi*, 639 B.R. 365, 384 (Bankr. S.D. Tex 2022).
[50] *Id.*
[51] *Id.*
[52] *Id.* at 385.

lack of ongoing operations that cause negative cash flow can be sufficient to establish a substantial or continuing loss to or diminution of the estate.[53]  When considering whether there is a substantial or continuing loss to or diminution of the estate, the Court must consider the individual circumstances of the Debtor.[54] Negative cash flow and an inability to pay current expenses can satisfy the diminution of the estate for purposes of § 1112(b).[55] In the context of a debtor who has ceased business operations and liquidated virtually all of its assets, any negative cash flow, including that resulting only from administrative expenses, effectively comes straight from the pockets of creditors and is sufficient to satisfy the first element of § 1112(b)(1).[56]

UST does not raise a substantial loss argument but instead argues that the estate is being diminished.[57] UST asserts that the estate is being diminished because Debtor will not have operational funds to engage in real estate development activities and, as a result, there will be insufficient cashflow to justify Debtor remaining in Chapter 11.[58]

Debtor concedes that its Fifth Amended Plan does not contemplate continued operations from the Debtor.[59] Debtor does, however, note in response that its Fifth Amended Plan contemplates collecting $3,600 in rent monthly over the life of the plan, which would be sufficient to satisfy administrative expenses and simultaneously, result in a higher return for creditors outside of a Chapter 7.[60]

---

[53] *In re Neosho Concrete Prods. Co.*, 2021 Bankr. LEXIS 1198, *12 (Bankr. W.D. Mo. 2021).
[54] *United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.* (*In re Timbers of Inwood Forest Assocs., Ltd.*), 808 F.2d 363, 371-72 (5th Cir.1987) (en banc).
[55] *In re TMT Procurement Corp.*, 534 B.R. at 919.
[56] *Loop Corp. v. United States Tr.*, 379 F.3d 511, 516 (8th Cir. 2004).
[57] ECF No. 280 p. 8.
[58] ECF No. 280 p. 8.
[59] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[60] ECF No. 300.

UST speculates that the estate will be diminished because Debtor's plan calls for liquidation.[61] The mere fact that Debtor's plan is a liquidating plan is insufficient to find diminution of the estate.[62] Debtor not having operating funds for real estate activities may be a consequence of its liquidating plan, but this does not demonstrate diminution of the estate.[63] Debtor has not liquidated its assets and projects a positive cash flow.[64] Further, UST has not shown present diminution and therefore failed to carry its burden to show that the estate is being diminished.[65]

Because UST has failed to show that there is a substantial loss or diminution to the estate, the Court need not consider if there is a substantial likelihood of rehabilitation.

Accordingly, the Court finds that cause does not exist to convert pursuant to § 1112(b)(4)(A).

The Court will next consider if cause exists to convert or dismiss pursuant to § 1112(b)(4)(B).

### 2.   Whether cause exists to convert pursuant to § 1112(b)(4)(B)

Next, the UST asserts that cause to convert exists pursuant to § 1112(b)(4)(B).[66]   Section 1112(b)(4)(B) provides that gross mismanagement of the estate is cause for dismissal or conversion.[67]   Analysis under § 1112(b)(4)(B) focuses solely on the post-petition management of

---

[61] ECF No. 280 p. 8.
[62] *See* 11 U.S.C. § 1129(a)(11);  *In re Deer Park*, 136 B.R. 815, 818 (9th Cir. B.A.P. 1992)
[63] Section 1123(b)(4) provides that a plan "may provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests."  Section 1123(b)(4) is not one of the excluded provisions of subchapter V pursuant to 11 U.S.C. § 1181.
[64] ECF No. 300-3.
[65] *Loop Corp. v. United States Tr.*, 379 F.3d at 516.
[66] 11 U.S.C. § 1112(b)(4)(B)
[67] 11 U.S.C. § 1112(b)(4)(B).

the estate and does not include mismanagement of the pre-petition debtor.[68] Therefore, the Court considers only the post-petition conduct of Debtor as debtor-in-possession.[69]

A debtor-in-possession is vested with significant power under the Bankruptcy Code and that power comes with certain responsibilities.[70] A debtor in possession owes a fiduciary duty to its creditors.[71] Gross mismanagement is a breach of that duty.[72] Assertions that a Debtor made unauthorized disbursements to insiders, professionals, and pre-petition unsecured creditors is not gross mismanagement, absent a showing that those disbursements are property of the estate pursuant to § 1186.[73] Simple mismanagement is insufficient for a finding of gross mismanagement of the estate.[74] Simple misconduct can collectively demonstrate gross mismanagement of the estate.[75]

The UST asserts that Mr. Rodriguez has grossly mismanaged the estate by: (a) failing to collect rent owed to the estate; (b) filing inaccurate monthly operating reports; (c) failure to negotiate Mr. Rodriguez's outstanding promissory note with the Debtor in good faith; (d) making a distribution from estate assets to a creditor without Court approval; and (e) misleading the UST by providing insurance for property not owned by the Debtor.[76]  The Court will consider each in turn.

### a.  Failure to collect rent owed to the estate

---

[68] *In re Zamora-Quezada*, 622 B.R. at 886 (citing *In re Briggs-Cockerham, L.L.C.*, 2010 Bankr. LEXIS 4132, 2010 WL 4866874, at *4 (Bankr. N.D. Tex. Nov. 23, 2010)).
[69] *In re Ozcelebi*, 639 B.R. 365, 388 (Bankr. S.D. Tex 2022).
[70] *In re Haydel Props., LP*, No. 12-50048, 2013 Bankr. LEXIS 5782, at *11-12 (Bankr. S.D. Miss. Mar. 11, 2013) (citing COLLIER ¶ 1112.04[6][b] (quoting *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 565 (Bankr. M.D. Pa. 2007)).
[71] *In re Ironside, LLC*, No. 20-34222, 2022 Bankr. LEXIS 409, at *4 (Bankr. S.D. Tex. Feb. 18, 2022).
[72] *Ozcelebi*, 639 B.R. at 388.
[73] *Id.* at 389.
[74] *In re Evans*, 48 B.R. 46, 47 (Bankr. W.D. Tex. 1985); citing *Matter of Anchorage Boat Sales, Inc.*, 4 B.R. 635 (Bankr. E.D.N.Y. 1980).
[75] See *Ozcelebi*, 639 B.R. at 395 ("While any one of the above enumerated errors may not alone constitute gross mismanagement, taken together, they demonstrate Debtor's gross mismanagement of the estate").
[76] August 3, 2023 – Courtroom Hearing (Closing Argument).

First, UST argues that Mr. Rodriguez's failure to collect rents belonging to the Debtor constitutes gross mismanagement of the estate.[77] Courts have held that failing to make any attempt to collect rent owed to the estate without providing a compelling reason for not doing so constitutes gross mismanagement.[78]

Here, the Court received testimony from Mr. Rodriguez that he has not been collecting rents from four apartments located on Lot 22 Hacienda Santa Lucia, a 4 plex in Pharr, Texas, ("*Apartments*") owned by the Debtor.[79] When questioned, Mr. Rodriguez provided inconsistent and unsatisfactory testimony as to why these rent proceeds were being collected by a third party, Pedro Aguirre, as opposed to the Debtor.[80] Mr. Rodriguez also provided inconsistent testimony suggesting that these rent proceeds may have been used to pay off the personal debts of Mr. Rodriguez rather than being remitted to the Debtor's estate.[81] Mr. Rodriguez's testimony is ultimately irrelevant and this Court gives it no weight.  The Court notes that the Apartments are listed on Debtor's schedules and are property of the estate.[82] Thus, pursuant to § 541(a)(1) all rents from the Apartments are also property of the estate and should have been collected by the Debtor.[83]

No efforts have been made to collect these payments on behalf of the Debtor, and this rent income was not disclosed as property of the estate on Debtor's monthly operating reports.[84] While Mr. Rodriguez suggests that once Debtor's Fifth Amended Plan is confirmed Debtor would begin

---

[77] August 3, 2023 – Courtroom Hearing (Closing Argument).
[78] *In re Royal Alice Props., LLC*, 2020 Bankr. LEXIS 2354 (Bankr. E. D. La. 2020); *see also In re 210 West Liberty Holdings, LLC*, No. 08-677, 2009 Bankr. LEXIS 1706 (Bankr. N.D. W. Va. May 29, 2009).
[79] ECF No. 300 p. 3; July 31, 2023 - Courtroom Hearing (Mario Rodriguez testifying).
[80] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[81] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[82] ECF No. 358 p. 12.
[83] ECF No. 358 p. 12.
[84] *See e.g.*, ECF No. 120, 180, 246, 367.

receiving these rents beginning in September 2023, he provides no satisfactory explanation as to why they have not been collected up to this point.[85]

As such, the Court finds that Debtor's failure to collect the apartment rents constitutes gross mismanagement of the estate.

### b.  Inaccurate Monthly Operating Reports

Second, UST asserts that Mr. Rodriguez grossly mismanaged the estate by failing to file accurate Monthly Operating Reports ("*MOR*").[86] Debtor is obligated pursuant to § 1116(4) to file MORs to provide the Court and parties in interest with an accurate financial picture of the debtor-in-possession.[87] When questioned about Debtor's MORs, Mr. Rodriguez admitted that information on some of the reports were inaccurate due to his mistakes.[88] For example, box fifteen on Debtor's MOR asks: "have you borrowed money from anyone or has anyone made any payments on your behalf."[89] Mr. Rodriguez admitted that his father gifted him the funds necessary to make Debtor's insurance payments, which he failed to disclose on box fifteen of Debtor's MOR for the month of May filed on July 31, 2023.[90]

Simple mismanagement is insufficient for a finding of gross mismanagement of the estate.[91] However, numerous inaccuracies in Debtor's MORs can demonstrate gross mismanagement when paired misconduct that leaves the Court and all parties in interest with an inaccurate picture of Debtor's financial condition.[92] The Court finds that the inaccuracies of Debtor's MORs supplements a finding of gross mismanagement here.

---

[85] ECF No. 300.
[86] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[87] 11 U.S.C. § 1187(b).
[88] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[89] *See e.g.* ECF No. 367.
[90] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[91] *In re Evans*, 48 B.R. 46, 47 (Bankr. W.D. Tex. 1985); citing *Matter of Anchorage Boat Sales, Inc.*, 4 B.R. 635 (Bankr. E.D.N.Y. 1980).
[92] *Ozcelebi*, 639 B.R. at 395.

As such, the Court finds that Debtor's inaccurate MORs contribute to a finding of gross mismanagement of the estate here.[93]

### c. Debtor's Promissory Note with Mr. Rodriguez

Third, UST asserts that Mr. Rodriguez grossly mismanaged the estate by violating his fiduciary duty to Debtor's creditors when negotiating the terms of a loan Mr. Rodriguez received from Debtor.[94] The Debtor asserts the loan was made pre-petition and therefore is not demonstrative of gross mismanagement of the estate.[95]

As discussed, gross mismanagement focuses solely on post-petition conduct.[96] Mr. Rodriguez testified that the loan was made pre-petition and the promissory note was made to provide certainty to the Court and creditors as to the accuracy of Debtor's accounts receivable.[97]

Debtor's amended Schedule A acknowledged the debt as existing prior to the bankruptcy[98] and UST does not dispute this fact.[99]

As such, absent evidence to the contrary, the Court finds that this loan was provided pre-petition and therefore does not arise to gross mismanagement of the estate.

### d. Payment made to International Bank of Commerce

Next, UST asserts that Mr. Rodriguez grossly mismanaged the estate by making a $80,000 post-petition payment to International Bank of Commerce ("*IBC*") on account of pre-petition debt with estate assets and without Court approval.[100] Debtor contends that the payment was not made with estate assets.[101]

---

[93] *Id.*
[94] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[95] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[96] *In re Zamora-Quezada*, 622 B.R. at 886.
[97] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[98] ECF No. 358.
[99] August 3, 2023 – Courtroom Hearing (Closing Argument).
[100] *Ozcelebi*, 639 B.R. at 388.
[101] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).

For this $80,000 payment to IBC to constitute gross mismanagement, UST must show that it was made with estate assets.[102] When asked about this transaction, Mr. Rodriguez mentioned that IBC was a previous creditor of the Debtor, and that the payment needed to be made to prevent an adverse action from being taken against the Debtor.[103] When asked about how he obtained the funds for this payment, he suggested that the funds used to make the $80,000 payment were a "gift from a friend" and not from estate assets.[104] The Court gives this testimony little weight. However, as discussed, for an expenditure to constitute gross mismanagement the movant must demonstrate that the payment was made using estate funds.[105] Here, UST failed to show that the $80,000 paid to IBC were made from estate assets.[106]

As such, the Court finds that the UST has failed to carry its burden to demonstrate the payment made by Mr. Rodriguez to IBC constitutes gross mismanagement of the estate.

### e.   Providing Insurance for Property not owned by the Debtor

Last, the UST asserts the insurance provided by the Debtor was misleading and constitutes gross mismanagement of the estate.[107]

Debtor provided UST proof of insurance on January 23, 2023, for property located at 4508 Blue Bird Ave., 2302 Corales St., and 2513 May Dr.,[108] that did not belong to the bankruptcy estate.[109] While testifying, Mr. Rodriguez admitted to providing such insurance and using money received as "gifts" to pay the premiums, but noted that he was initially mistaken about whether Debtor owned those properties and later amended Debtor's schedule during bankruptcy to reflect

---

[102] *Ozcelebi*, 639 B.R. at 388.
[103] *Id.*
[104] *Id.*
[105] *Ozcelebi*, 639 B.R. at 388.
[106] August 3, 2023 – Courtroom Hearing (Closing Argument).
[107] August 3, 2023 – Courtroom Hearing (Closing Argument).
[108] ECF No. 271-8.
[109] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).

that Debtor did not actually own those insured properties.[110] The UST asserts that this conduct constitutes gross mismanagement of the estate.[111]

Similar to the inaccurate MORs discussed *supra*, misconduct that leaves the Court and all parties in interest with an inaccurate picture of Debtor's financial condition can contribute to a finding of gross mismanagement.[112] Providing the UST with insurance for property not owned by the Debtor paints an inaccurate picture of Debtor's financial condition and therefore supplements a finding of gross mismanagement here.

In sum, Debtor's failure to collect rents owed to the estate, Debtor's inaccurate MORs, and Debtor providing insurance for non-estate property, collectively is sufficient to find cause to convert or dismiss Debtor's case for gross mismanagement pursuant to § 1112(b)(4)(B).[113]

Accordingly, the Court finds pursuant to § 1112(b)(4)(B) that Debtor has grossly mismanaged the estate.

The Court will next consider if cause exists to convert or dismiss pursuant to § 1112(b)(4)(C).

### 3.  Whether cause exists to convert pursuant to § 1112(b)(4)(C)

UST asserts that cause exists because Debtor has failed to maintain insurance on its real property.[114]

Section 1112(b)(4)(C) provides that cause includes "failure to maintain appropriate insurance that poses a risk to the estate or to the public."[115] Section 1112(b)(4)(C) is designed to safeguard against a debtor's failure to maintain proper insurance that exposes the estate to liabilities

---

[110] *Id.*; ECF No. 358.
[111] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[112] *Ozcelebi*, 639 B.R. at 395.
[113] *In re Royal Alice Props., LLC*, 2020 Bankr. LEXIS 2354 (Bankr. E. D. La. 2020); *see also In re 210 West Liberty Holdings, LLC*, No. 08-677, 2009 Bankr. LEXIS 1706 (Bankr. N.D. W. Va. May 29, 2009).
[114] ECF No. 280 p. 11.
[115] 11 U.S.C. § 1112(b)(4)(C).

that threaten creditors' recoveries, the stability of the bankrupt entity, or the public generally.[116] When a debtor owns real property with structures, § 1112(b)(4)(C) requires that the debtor maintain casualty and liability insurance to protect the estate and the public.[117]

Here, UST requested that Debtor provide proof of insurance of "all assets" and the Court ordered that by March 2, 2023, Debtor must "provide proof of insurance on all assets to the U.S.T. listing the UST as a party of notice."[118] Debtor concedes that Debtor has failed to insure its properties even now, more than five months after the date specified in this Court's order.[119] Debtor claims to have obtained insurance on some property, but concedes that it has failed to insure all property due to lack of funds because it has been unable to sell properties in the face of UST's objections.[120]

Debtor's reasoning is ultimately irrelevant and without merit. Debtor has had a more than ample opportunity to obtain liability and property insurance and has failed to do so. An inability to pay is not an excuse to not maintain insurance sufficient to avoid conversion or dismissal under § 1112(b)(4)(C).[121]

Accordingly, the Court finds cause to dismiss or convert pursuant to § 1112(b)(4)(C).

The Court will next consider if cause exists to convert or dismiss pursuant to § 1112(b)(4)(E).

---

[116] *In re Honx Inc.*, 2022 Bankr. LEXIS 3651 (Bankr. S.D. Tex. 2022); *see also In re Delta AG Group, LLC*, 596 B.R. 186, 196 (Bankr. W.D. La. 2019) (dismissing a case for failure to maintain insurance to address inherent risks in the debtors' business operations).

[117] *Gilroy v. Ameriquest Mortgage Co., et al.*, 2008 Bankr. LEXIS 3968, (1st Cir. BAP 2008) (failure to maintain property and liability insurance for five condominiums constitutes cause for dismissal); *Derivium Capital LLC v. U.S. Trustee*, No. 5 Civ. 10845, 2006 U.S. Dist. LEXIS 31427, *11 (S.D.N.Y. 2006) (affirming the bankruptcy court's decision to convert a chapter 11 case partially because the debtor lacked proper insurance coverage); *In re Van Eck*, 425 B.R. 54, 60-61 (Bankr. D. Conn. 2010) (finding that cause existed in part, because the debtor failed to show that there was insurance on residential property he owed.).

[118] ECF No. 46.

[119] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).

[120] ECF No. 337 p. 4.

[121] *Id.* (holding that "the fact that the properties were uninsured for one month is irrelevant, as the properties remained uninsured thereafter").

**4.  Whether cause exists to convert pursuant to § 1112(b)(4)(E)**

The UST asserts that cause exists because Debtor has failed to comply with this Court's Status Conference Order.[122]

The protection a debtor receives under the Bankruptcy Code comes with an obligation to strictly abide by the bankruptcy court's orders.[123] Section 1112(b)(4)(E) embodies that principle.[124] Cause to convert pursuant to § 1112(b)(4)(E) exists if a debtor fails to comply with a single order; a pattern of non-compliance is not required by the statute.[125] Nor does § 1112(b)(4)(E) require a debtor's non-compliance to be willful, in bad faith, or fraudulent.[126]

As discussed *supra*, this Court ordered Debtor to "provide proof of insurance on all assets to the U.S.T. listing the UST as a party of notice" no later than March 2, 2023.[127] Debtor failed to provide proof of insurance to the UST by that deadline, and even five months after the deadline was still unable to insure all of Debtor's real property. Debtor's only explanation for this was an inability to pay for the insurance.[128] However, as discussed, a failure to comply with an order of this Court need not be willful, in bad faith, or fraudulent. Thus, even taking Debtor's assertion at face value, Debtor's failure to maintain insurance on its real property in contravention of this Court's order constitutes cause under § 1112(b)(4)(E).

Accordingly, the Court finds that cause exists under § 1112(b)(4)(E) for conversion or dismissal.

---

[122] ECF No. 280 p. 11; ECF No. 46.
[123] *In re Babayoff*, 445 B.R. 64, 80 (Bankr. E.D.N.Y. 2011) (citing *Babakitis v. Robino* (*In re Robino*), 243 B.R. 472, 487 (Bankr. N.D. Ala. 1999)).
[124] *In re Ford Steel, LLC*, 629 B.R. 871, 888 (Bankr. S.D. Tex. 2021).
[125] *In re Hoyle*, 2013 Bankr. LEXIS 420, at *30-31 (Bankr. D. Ida. Jan. 17, 2013) ("Instead, '[t]he statute [§ 1112(b)(4)(E)] is written in the singular; thus failure to comply with a single order is sufficient for cause.'") (quoting *In re Bijelonic*, 2012 U.S. Dist. LEXIS 84130, at *12-13 (C.D. Cal. June 15, 2012)).
[126] *In re Babayoff*, 445 B.R. at 80 (citing *In re Tornheim*, 181 B.R. 161 (Bankr. S.D.N.Y. 1995)).
[127] ECF No. 46.
[128] ECF No. 337 p. 6.

The Court will next consider if cause exists to convert or dismiss pursuant to § 1112(b)(4)(H).

**5. Whether cause exists to convert pursuant to § 1112(b)(4)(H)**

The UST asserts that cause exists because Debtor has failed to timely provide information requested by the UST.[129]

Section 1112(b)(4)(H) provides that cause exists to convert or dismiss for "failure timely to provide information or attend meetings reasonably requested by the United States Trustee (or the bankruptcy administrator, if any)."[130] A debtor's failure to timely provide information reasonably requested by the UST does not need to be "unexcused" to constitute cause."[131]

As discussed *supra*, the UST requested that Debtor provide proof of insurance of all assets and to list the U.S. Trustee as a party of notice in the insurance policy.[132] Mr. Rodriguez has admitted that proof of insurance was provided to the UST for properties that were not owned by the Debtor.[133] Some insurance was provided that purported to insure at least two of the apartments in a four plex owned by Debtor, but proof of the other apartments being insured was not provided to the UST.[134]

The Debtor has also untimely and more recently failed to submit Monthly Operating Reports.[135] The Debtor filed its May Operating Report on July 31, 2023, and has not submitted operating reports for any of the months that followed.[136] Debtor did not provide an excuse for

---

[129] ECF No. 280 p. 11.
[130] *In re P.R. Hosp. Supply, Inc.*, 2020 Bankr. LEXIS 2742 (Bankr. D.P.R. 2020).
[131] *Andover Covered Bridge, LLC v. Harrington* (*In re Andover Covered Bridge, LLC*), 553 B.R. 162, 173-174 (1st Cir. B.A.P. 2016).
[132] ECF No. 280 p. 11.
[133] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying); *see also* ECF No. 271-8.
[134] *Id.*
[135] ECF. No. 367.
[136] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).

failure to file these reports.[137] Failing to provide accurate MORs is cause for conversion or dismissal.[138] The Court finds that failing to provide proof of insurance and failing to timely submit its MORs as reasonably requested by the UST constitutes cause to convert or dismiss under § 1112(b)(4)(H).

Accordingly, the Court finds cause for conversion or dismissal pursuant to § 1112(b)(4)(H).

The Court will next consider if cause exists to convert or dismiss pursuant to § 1112(b)(4)(J).

### 6.  Whether cause exists to convert pursuant to § 1112(b)(4)(J)

The UST asserts that Debtor has delayed confirming a plan, "defeat[ing] the purpose of a Subchapter V reorganization, increasing the costs of administrative expenses and reducing repayment to creditors."[139] Debtor denies causing any delay in plan confirmation.[140]

Section 1112(b)(4)(J) may provide relief where a debtor fails "to make meaningful and substantive progress toward the confirmation of a plan within the time periods fixed by the Bankruptcy Code and any court orders[.]"[141]

The UST cites *In re Double H Transportation LLC* in support of its position that Debtor has failed to make meaningful progress towards confirmation of a plan.[142] In *Double H Transportation*, the district court affirmed an order converting a case where a Debtor had failed to confirm a Chapter 11 plan three times.[143] The district court cautioned against applying §

---

[137] *Id.*
[138] *In re N.Y. Hand & Physical Therapy PLLC*, 2023 Bankr. LEXIS 1028, *7 (Bankr. S.D.N.Y. 2023).
[139] ECF No. 280 p. 9.
[140] ECF No. 337 p. 5.
[141] *In re Babayoff*, 445 B.R. at 64, 79.
[142] *Id.*
[143] 603 F. Supp. 3d 468, 479 (W.D. Tex. 2022).

1112(b)(4)(J) too harshly, but noted that the bankruptcy court had "no duty to grant Debtor a fourth bite at the apple."[144]

Bankruptcy courts are given a great deal of discretion to say when enough is enough.[145] The Debtor in this case has proposed six alternative Chapter 11 plans.[146] However, the number of amendments made to an initial plan, by itself, is not dispositive on whether the debtor has failed to make meaningful and substantive progress towards confirmation.[147] Section 1193(a) provides that a Debtor "may modify a plan at any time before confirmation…" and the Court finds that four months of alternative plan proposals is indicative of a Debtor that is at least attempting to make meaningful progress towards confirmation.[148] Here, Debtor's initial plan was timely filed on April 3, 2023, and the Court finds that, notwithstanding numerous revisions, that Debtor has not delayed confirming a plan.

Accordingly, the Court finds that cause does not exist to convert or dismiss under § 1112(b)(4)(J).

The Court will next consider if cause exists to convert or dismiss for lack of good faith.

### 7.  Whether cause exists to convert for lack of good faith

The UST asserts that cause exists to convert for lack of good faith.[149]

As this Court stated in *In re Zamora-Quezada*, "[w]hilst [§ 1112(b)(4)] does not specify bad-faith conduct as cause for conversion or dismissal, bankruptcy courts nevertheless routinely treat dismissal for bad faith conduct as implicitly authorized by the words for cause."[150]  The Fifth

---

[144] *Id.*; *see also In re Woodbrook Assocs.*, 19 F.3d 312, 322 (7th Cir. 1994) (observing, under that § 1112(b), "bankruptcy courts are given a great deal of discretion to say when enough is enough").
[145] *Woodbrook Assocs.,* 19 F.3d at 322.
[146] ECF No. 143, 182, 210, 242, 268, 300.
[147] ECF. No. 148.
[148] 11 U.S.C. § 1193(a).
[149] ECF No. 280 p. 10.
[150] 622 B.R. 865, 879 (Bankr. S.D. Tex. 2017) (cleaned up) (quoting *Marrama v. Citizens Bank*, 549 U.S. 365, 367, n.1, 373 (2007)).

Circuit has provided that "[e]very bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings."[151] The implicit good faith requirement "prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without bene-fitting them in any way or to achieve reprehensible purposes."[152] Lack of good faith findings are typically "predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than any single datum."[153]

Thus, courts should employ a totality of the circumstances approach when considering a lack of good faith.[154] Such an approach is an on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities.[155] Bad-faith conduct can include prepetition bad-faith conduct, post-petition bad faith conduct, or petitions that serve no legitimate bankruptcy purpose.[156] Courts have also identified several factors indicative of a bad faith filing, including, as relevant here: when the debtor has engaged in improper pre-petition conduct, when the debtor employs few or zero employees other than its principals, and when there is little or no cash flow or source of income to sustain a reorganization.[157]

The UST asserts the following as proof of bad faith of the Debtor: (a) Debtor's involvement in various fraudulent real estate transactions executed through its President, Mr. Rodriguez, who pled guilty in state court to four counts of fraud regarding releases of liens of Commack,[158] (b) claims filed by creditors against the Debtor alleging fraud,[159] (c) Debtor's failure to schedule

[151] *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986).
[152] *Id.* at 1071-72.
[153] *Id.* at 1072.
[154] *Id.*
[155] *In re Zamora-Quezada*, 622 B.R. at 880.
[156] *Krueger v. Torres (In re Krueger)*, 812 F.3d 365, 370 (5th Cir. 2016).
[157] *In re 1701 Commerce, LLC*, 477 B.R. 652, 657-58 (Bankr. N.D. Tex. 2012).
[158] ECF No. 280 p. 10.
[159] ECF No. 280 p. 10.

certain liabilities against the estate,[160] (d) lack of cash flow of the business,[161] (e) that Mr. Rodriguez is the Debtor's only employee,[162] (f) Debtor's failure to accurately present information on Debtor's Monthly Operating Reports,[163] (g) Debtor's failure to timely and file past-due Monthly Operating Reports,[164] (h) Debtor's failure to show an arms-length negotiation regarding Mr. Rodriguez's interest-free loan and promissory note,[165] (i) Debtor's failure to show an arms-length negotiation regarding Mr. Rodriguez's negotiations and interest-free promissory note with Mayberry Crossing LLC,[166] (j) Mr. Rodriguez filing for personal bankruptcy shortly after signing the promissory note with Debtor,[167] and (k) providing the UST proof of insurance for property not owned by the Debtor.[168]

The Court will consider each factor in turn.

### a.    Mr. Rodriguez's State Court Fraud Convictions

The UST asserts that Mr. Rodriguez's state court fraud convictions regarding fraudulent property transfers formerly belonging to Debtor constitute evidence of bad faith.[169] Mr. Rodriguez conceded that he had pled guilty to fraud.[170]

A Debtor's improper pre-petition conduct can serve as indicia of bad faith.[171] Mr. Rodriguez's fraud convictions are all centered around fraudulent real estate transactions involving the Debtor in its operation of business.[172] The Court finds this pre-petition conduct is indicative of

---

[160] July 31, 2023 - Courtroom Hearing (Alejandra Rios, Sanjera Valencia, Ann Falcon testifying).
[161] ECF No. 280 p. 10.
[162] ECF No. 280 p. 10.
[163] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[164] *Id.*
[165] *Id.*
[166] *Id.*
[167] *Id.*
[168] *Id.*
[169] August 3, 2023 – Courtroom Hearing (Closing Argument).
[170] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[171] *In re 1701 Commcee, LLC*, 477 B.R. at 658; *In re Zamora-Quezada*, 622 B.R. at 878.
[172] *See e.g.*, ECF No. 280 p. 10.

bad faith because it has negatively impacted the Debtor's financial condition by exposing the Debtor to claims of fraud.[173]

As such, the Court finds that the fraudulent acts of Mr. Rodriguez, Debtor's president, contributes toward a finding of bad faith.[174]

### b.    Claims filed against the Debtor alleging fraud

The UST asserts that claims against the Debtor alleging fraud are proof of Debtor's bad faith.[175] Citing Federal Rule of Bankruptcy Procedure ("*Bankruptcy Rule*") 3001(f), UST contends that because Debtor has not objected to proofs of claim against the Debtor alleging fraud, that the proofs of claim constitute evidence of the validity of the claims.[176] The Debtor argues that these claims cannot be indicative of bad faith because the deadline to file objections has not yet been tolled, and because some of the claims did not include evidence of the requisite and essential elements of what constitutes fraud.[177]

Bankruptcy Rule 3001(f) provides "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."[178]

UST is mistaken about the effect of Bankruptcy Rule 3001(f). Filing a claim signifies that a potential claim exists, which is instrumental for plan approval and for the proper distribution of the debtor's assets.[179] Filing a claim alone does not, in a Chapter 11, serve as a de facto judgment that a fraud claim has been adjudicated against the Debtor.[180] Nevertheless, without addressing

---

[173] *See In re Zamora-Quezada*, 622 B.R. at 880 (holding that examining bad faith includes an on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities).
[174] *Little Creek*, 779 F.2d at 1072.
[175] August 3, 2023 – Courtroom Hearing (Closing Argument).
[176] ECF No. 280 p. 10.
[177] *In re Yentis*, 125 B.R. 158, 162 (N.D. Tex. 1991).
[178] Fed.R.Bankr.P. 3001(f).
[179] *RDNJ Trowbridge v. Chesapeake Energy Corp*. (*In re Chesapeake Energy Corp.*), 70 F. 4th 273, 282 (5th Cir. 2023).
[180] *Yentis*, 125 B.R. at 162.

whether a fraud claim is indicative of bad faith when the Debtor has not objected, Debtor still has the opportunity to object to these claims here.[181]

Thus, the Court agrees with Debtor and finds that Debtor not objecting to proofs of claims alleging fraud before confirmation is not demonstrative of Debtor's alleged bad conduct.

As such, the Court does not find this factor as indicative of bad faith.

### c.      Debtor's failure to schedule certain liabilities against the estate

Failure to disclose information on a bankruptcy schedule constitutes bad faith conduct.[182] The UST asserts that Debtor's failure to schedule contingent claims belonging to Alejandra Rios, Sanjera Valencia, and Ann Falcon ("*Undisclosed Creditors*") against the estate demonstrates bad faith.[183]

All three Undisclosed Creditors provided testimony that they had purchased homes from the Debtor, and that they believed the Debtor owed them their homes due to Mr. Rodriguez's conduct.[184] The Undisclosed Creditors testified that Mr. Rodriguez failed to remit proceeds to the lienholders of the lots sold to them, and that they faced foreclosure due to this failure, thus giving rise to fraud claims against the Debtor.[185] Further, the Undisclosed Creditors testified that Mr. Rodriguez was aware of the issue and told them that he was going to fix it for them.[186] When asked, Mr. Rodriguez testified that he was unaware the Undisclosed Creditors held contingent claims against the estate and only became aware of them at the July 31, 2023, Hearing.[187] The UST asserts that this is precisely why a Chapter 7 trustee is needed in this case, because the undisclosed creditors' testimony reveals that Debtor was seemingly engaged in property transfers where it

---

[181] *See* Fed. R. Bankr. P. 3007.
[182] *In re Ozcelebi*, 639 B.R. at 400.
[183] August 3, 2023 – Courtroom Hearing (Closing Argument).
[184] July 31, 2023 - Courtroom Hearing (Alejandra Rios, Sanjera Valencia, Ann Falcon testifying).
[185] *Id.*
[186] July 31, 2023 - Courtroom Hearing (Alejandra Rios, Sanjera Valencia, Ann Falcon testifying).
[187] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).

failed to remove liens, and land transferees were having their homes foreclosed on due to Debtor's actions.[188] The Court finds the testimony of the Undisclosed Creditors to be credible and  Mr. Rodriguez's testimony unreliable. The Court finds that Debtor knew about these potential claims and intentionally failed to schedule them.

As such, the Court finds Debtor's intentional failure to schedule these claims as indicative of bad faith.

### d.    Debtor's lack of cash flow

UST asserts that Debtor's lack of cash flow is indicative of bad faith.[189] Little or no cash flow, or a source of income to sustain a reorganization can be indicative of bad faith.[190] As discussed *supra*, and as evidenced by Debtor's MORs, Debtor has little to no cash flow.[191]

As such, the Court finds Debtor's lack of cash flow to be indicative of bad faith.[192]

### e.    Mr. Rodriguez is the Debtor's only employee

UST asserts that because there are no jobs or employees to protect here, Debtor's principal being the only employee is indicative of bad faith.[193] Debtor concedes that he is Debtor's only employee.[194]

Employing few or zero employees other than its principals can be indicative of bad faith[195] because, *inter alia*, the purpose of Chapter 11 is to protect a debtor's employees and not just its

---

[188] August 3, 2023 – Courtroom Hearing (Closing Argument).
[189] ECF No. 280 p. 10.
[190] *In re 1701 Commcee, LLC*, 477 B.R. at 658.
[191] *See e.g.*, ECF No. 120, 180, 246, 367.
[192] *See In re Little Creek Dev. Co.*, 779 F.2d at 1074.
[193] ECF No. 280 p. 10.
[194] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[195] *Little Creek*, 779 F.2d at 1072-73.

principals.[196] Here, Debtor's petition identifies Mr. Rodriguez as both its president and sole shareholder and lists no other employees.[197]

As such, the Court finds that Debtor's principal being Debtor's only employee is indicative of bad faith.[198]

### f.    Debtor's failure to accurately present information on Debtor's Monthly Operating Reports

The UST asserts that Debtor has failed to accurately present information on its monthly operating reports.[199] Specifically, UST asserts that Debtor has not been disclosing payments made by third parties on behalf of the Debtor or the rent income being generated from the apartments located at a 4 plex in Pharr, Texas owned by the Debtor.[200]

Pursuant to § 1116(4), made applicable to Subchapter V cases through § 1187(b), a Debtor must file all post-petition financial and other reports as required by the Federal Rules of Bankruptcy Procedure or by local rule of the district court.[201] Failure to make full and candid disclosures, such as income, on Debtor's MORs is indicative of bad faith.[202]

When questioned, Mr. Rodriguez conceded that box fifteen on Debtor's March, April, and May MORs were incorrectly marked "no" when he did in fact receive gifts from third parties on behalf of the Debtor."[203] Mr. Rodriguez did not provide an explanation for why the rent income was not disclosed on Debtor's MORs.[204]

---

[196] *Id.* at 1073.
[197] ECF No. 1.
[198] *See In re Little Creek Dev. Co.*, 779 F.2d at 1074.
[199] August 3, 2023 – Courtroom Hearing (Closing Argument).
[200] ECF No. 300 p. 3; August 3, 2023 – Courtroom Hearing (Closing Argument).
[201] 11 U.S.C. § 1116(4).
[202] *In re Ozcelebi*, 639 B.R. at 422.
[203] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[204] *Id.*

As such, this Court finds that pursuant to § 1187(b), Debtor's failure to accurately disclose information in their MORs is indicative of bad faith.

### g.    Debtor's failure to timely file MORs

The UST asserts that the Debtor has failed to file a monthly operating report for June.[205] Failing to file MORs is a violation of a debtor's fiduciary obligation under the Code and is indicative of bad faith.[206] The Debtor filed their May Operating Report on July 31, 2023, and has not submitted MORs for any of the months that followed.[207] Debtor did not provide an excuse for failure to provide these reports.[208]

As such, the Court finds that Debtor's failure to file MORs timely is indicative of bad faith.

### h.    Debtor's failure to show an arms-length negotiation regarding Mr. Rodriguez's interest-free loan and promissory note

The UST asserts that Debtor's promissory note was negotiated unfavorably, and that Mr. Rodriguez taking out a loan for personal reasons is indicative of bad faith.[209] Debtor replies that the loan was made several years ago and that taking a loan from the business as the sole shareholder is not indicative of bad faith.[210] Mr. Rodriguez testified that the promissory note was just made to provide more confidence that the loan would be repaid and was not a new negotiation.[211]

UST cites no authority indicating that a principal and sole shareholder taking a loan from their business in the past is indicative of bad faith. Merely reaffirming an existing debt is different from actively taking money post-petition from the Debtor or renegotiating terms of a loan. The

---

[205] August 3, 2023 – Courtroom Hearing (Closing Argument).
[206] *See In re Peak Serum, Inc.*, 623 B.R. 609, 620 (Bankr. Col. 2020) ("Inherent in debtor's fiduciary obligations under the Code is the duty to file accurate financial reports disclosing all transactions involving estate assets…") (quoting *Plaza de Retiro, Inc.*, 417 B.R. 632, 641 (Bankr. D.N.M. 2009).
[207] ECF No. 367; August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[208] *Id.*
[209] August 3, 2023 – Courtroom Hearing (Closing Argument).
[210] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[211] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).

Court finds that merely having a loan from the Debtor and reaffirming its existence for the benefit of creditors does not demonstrate bad faith here.

As such, the Court does not find this factor as indicative of bad faith.

### i. Debtor's failure to show an arms-length negotiation regarding Mr. Rodriguez's negotiations and interest-free promissory note with Mayberry Crossing LLC

The UST similarly asserts that Mr. Rodriguez failed to negotiate with Mayberry Crossing LLC ("*Mayberry Crossing*") in good faith with regards to a $397,000.00 loan made to Mayberry Crossing by the Debtor.[212] Mr. Rodriguez testified that Mayberry Crossing was owned by a friend of his wife, and that the interest free loan was given years ago to help the friend's business, but he had the promissory note made post-petition merely to provide more confidence that the loan would be repaid.[213] The UST has offered no evidence disputing Mr. Rodriguez's testimony.

As mentioned *supra*, reaffirming an existing debt is different from actively taking money post-petition from the Debtor or renegotiating unfavorable terms of a loan. The loan was made from Mr. Rodriguez in his role as principal and sole shareholder prior to the bankruptcy, and UST has not cited any authority demonstrating that providing an interest free loan to another company pre-petition shows bad faith.[214]

As such, the Court does not find this factor as indicative of bad faith.

### j. Mr. Rodriguez filing for personal bankruptcy shortly before signing a promissory note with Debtor

UST asserts that Mr. Rodriguez filing a personal Chapter 11 bankruptcy for himself after creating the promissory note demonstrates a conflict of interest and bad faith.[215] UST argues Mr.

---

[212] August 3, 2023 – Courtroom Hearing (Closing Argument); *see also* ECF No. 300-5.
[213] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[214] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[215] August 3, 2023 – Courtroom Hearing (Closing Argument).

Rodriguez's bankruptcy frustrates collection efforts against him for Debtor's account receivables, and the representations made to the Court as to when Debtor will collect these funds are proof of bad faith.[216]  Mr. Rodriguez filed for Chapter 11 on July 3, 2023;[217] however, Mr. Rodriguez's petition was struck on August 18, 2023, for failure to take a pre-petition credit counseling course pursuant to § 109(h)(1).[218]

      As such, USTs argument is moot.

      **k.**      **Providing the UST proof of insurance for property not owned by the Debtor**

      The UST asserts, that Debtor provided the UST with insurance for properties that do not belong to the estate.[219] As the Court discussed *supra*, Debtor providing this insurance to the UST for properties not belonging to the estate is misleading. The Court finds this conduct is indicative of bad faith.[220]

      In sum, the Court finds the following factors as indicative of bad faith: (a) Mr. Rodriguez's State Court Fraud Convictions; (c) Debtor's failure to schedule certain liabilities against the estate; (d) Debtor's lack of cash flow; (e) Mr. Rodriguez is the Debtor's only employee; (f) Debtor's failure to accurately present information on Debtor's MORs; (g) Debtor's failure to timely file MORs; and (k) Providing the UST proof of insurance for property not owned by the Debtor.

      Accordingly, having weighed the totality of the circumstances, the Court finds Debtor has operated in bad faith and cause exists to convert or dismiss pursuant to § 1112(b).

---

[216] August 3, 2023 – Courtroom Hearing (Closing Argument).
[217] ECF No. 344-8.
[218] 23-70131 ECF No. 27.
[219] August 3, 2023 – Courtroom Hearing (Closing Argument).
[220] *See In re Evans*, 48 B.R. 46, 47 (Bankr. W.D. Tex. 1985) (courts require more than simple mismanagement for gross mismanagement).

Having found that there is cause to convert or dismiss, the Court will now determine whether there are unusual circumstances that converting or dismissing the case is not in the best interest of creditors and the estate.

### 8. Whether unusual circumstances establish that converting or dismissing this case is not in the best interest of creditors and the estate

Section 1112(b)(2) provides:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
>
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
>
> (i) for which there exists a reasonable justification for the act or omission; and
>
> (ii) that will be cured within a reasonable period of time fixed by the court.[221]

The phrase "unusual circumstances" is not defined in the Bankruptcy Code, but "the word 'unusual' contemplates facts that are not common to Chapter 11 cases generally."[222] Determining whether unusual circumstances exist is a fact intensive inquiry.[223] Once cause has been shown, the Debtor has the burden to specifically identify "unusual circumstances establishing that converting or dismissing the case is not in the best interest of creditors or the estate."[224] Bankruptcy courts have significant discretion in making the determination as to whether there are unusual circumstances that should prevent conversion or dismissal.[225] Though the Code does not define

[221] 11 U.S.C. § 1112(b)(2).
[222] *In re Triumph Christian Ctr., Inc.*, 493 B.R. 479, 496 (Bankr. S.D. Tex. 2013) (citing COLLIER ¶ 1112.05[2]).
[223] *Id.*
[224] *In re Baribeau*, 603 B.R. 797, 802 (Bankr. W.D. Tex. 2019).
[225] *In re Triumph Christian Ctr., Inc.*, 493 B.R. 479, 496 (Bankr. S.D. Tex. 2013) (citing *In re 1031 Tax Grp., LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007)).

"unusual circumstances," it does not focus on the unusual circumstances of a debtor's life; it focuses on unusual circumstances of the creditors or estate.[226]

Debtor has not alleged any unusual circumstances justifying why this case should not be converted other than a bald unsupported assertion that its Subchapter V liquidation plan would leave creditors better off than in a Chapter 7 liquidation, and that proceeding under its plan would lower costs overall.[227] None the less, the Court will briefly consider each in turn.

### a. Whether Debtor's liquidation plan would leave creditors better off

First, Debtor asserts that confirming its plan would provide creditors a larger dividend than in a Chapter 7 liquidation.[228] However, Debtor's first argument merely illustrates a requirement of confirming a plan under Subchapter V, that holders of a claim must "receive or retain under the plan…a value…not less than the amount the holder would so receive or retain if the debtor were liquidated under chapter 7 of this title…."[229] Furthermore, Debtor fails to provide evidence or cite any authority demonstrating that a Subchapter V plan providing a greater dividend than a Chapter 7 constitutes unusual circumstances.

As such, this argument fails.

### b. The Subchapter V trustee's specialized knowledge

Debtor also asserts that the Subchapter V trustee has specialized knowledge of the innerworkings of this case, which constitutes unusual circumstances justifying remaining in Chapter 11.[230] Debtor contends that the Subchapter V Trustee has developed specialized institutional knowledge of the Debtor over the seven months the Bankruptcy Case has been

---

[226] *In re Assadi*, 2021 U.S. Dist. LEXIS 44377, *10 (W.D. Tex. 2021).
[227] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[228] *See* ECF No. 300-2.
[229] 11 U.S.C. § 1129(b)(7)(A)(ii).
[230] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).

pending, and thus is better positioned to liquidate the estate than a new Chapter 7 trustee.[231] This is reflected in Debtor's liquidation analysis, and assumes that the liquidating trustee would do due diligence in appraising and selling real estate, and a Chapter 7 Trustee would only sell debtor's real estate according to its "par" or apparent value.[232]

The Court finds Debtor's argument to be without merit. A Subchapter V trustee is appointed in every case where the Debtor has elected to proceed under Subchapter V.[233] In each of those cases the trustee has statutory duties including, *inter alia*, being accountable for all property received,[234] examining proofs of claims and objecting as proper,[235] being present at status conferences,[236] and facilitating the development of a consensual plan of reorganization.[237] The trustee's duties by their very nature necessarily lend themselves to developing a professional familiarity with the case. Therefore, because a finding of "unusual circumstances" requires facts that are not common to Chapter 11 cases generally, and the general benefits of having a subchapter V trustee are common to Chapter 11 cases,[238] the Court finds that there are no unusual circumstances establishing that converting or dismissing the case is not in the best interest of creditors and the estate.

Thus, the Court must decide whether this case should be converted or dismissed.

### 9. **Whether this Court should convert this case to Chapter 7 or dismiss this case**

Upon finding cause, a court must decide whether conversion or dismissal is in the best interest of the creditors and the estate.[239] There is no bright line test to determine whether

---

[231] *Id.*
[232] *Id.*
[233] 11 U.S.C. § 1183(a).
[234] 11 U.S.C. § 704(a)(2).
[235] 11 U.S.C. § 704(a)(5).
[236] 11 U.S.C. § 1183(b)(3).
[237] 11 U.S.C. § 1183(b)(7).
[238] *Ozcelebi*, 639 B.R. at 425.
[239] 11 U.S.C. § 1112(b)(1).

conversion or dismissal is in the best interest of creditors and the estate.[240] The Court has broad discretion to determine whether conversion or dismissal is in the best interests of the creditors and the estate.[241]

Here, UST recommends conversion because [t]here appear to be valuable real estate assets and potential claims under Chapter 5 that could provide a meaningful recovery to the bankruptcy estate.[242] Comack incorporates the UST's motion by reference, but requests either conversion or dismissal, asserting that Debtor's bad faith warrants denying the Debtor bankruptcy protection: "[g]iven the Debtor's owner's criminal conduct perpetuated on the [c]reditors and the widespread distrust of Mario Rodriguez, any property sales should only be conducted by the Chapter 7 Trustee."[243]

The best interest of the estate ultimately turns on whether its economic value is greater in or out of bankruptcy.[244] Here the Debtor has 25 properties that can be sold to generate a recovery for the creditors.[245] There has been inconsistent testimony regarding the value of Debtor's estate and whether Debtor would pursue its chapter 5 causes of action.[246] Both these facts indicate greater economic value being produced in bankruptcy rather than outside of bankruptcy.

Further, the Court finds based on the numerous findings of bad faith and gross mismanagement of the estate by the Debtor, that a Chapter 7 trustee would be better positioned to investigate and effectively liquidate the numerous pieces of real estate owned by Debtor.[247] Further, a common rationale, persistent in the numerous objections to Debtor's plan, included

---

[240] *In re Fleetstar LLC*, 614 B.R. 767, 781 (Bankr. E.D. La. 2020) (quoting *In re Babayoff*, 445 B.R. 64, 81 (Bankr. E.D.N.Y. 2011)).
[241] *In re Ozcelebi*, 639 B.R. at 425; *see also In re TMT Procurement Corp.*, 534 B.R. at 921.
[242] ECF No. 280 p. 11.
[243] ECF No. 310 p. 2, 6.
[244] *In re Delta AG Grp., LLC*, 596 B.R. 186, 201 (Bankr. W.D. La. 2019).
[245] ECF No. 300-2 (listing the numerous sublots owned by the Debtor in their proposed liquidation plan).
[246] *Ozcelebi*, 639 B.R. at 425
[247] *See e.g.*, ECF No. 300 (listing the numerous sublots owned by the Debtor in their proposed liquidation plan).

distrust of the Debtor to effectively liquidate.[248] The Debtor even conceded that it proposed removing the debtor-in-possession because of the widespread distrust of Mr. Rodriguez mentioned at each prior confirmation hearing.[249] The appointment of a Chapter 7 trustee is in the best interest of the creditors here.

Accordingly, UST's Motion to Convert is granted. Furthermore, this Court finds that converting this case to Chapter 7 is in the best interests of creditors and the estate.

The Court next considers Comack's Motion to Convert or Dismiss.

## C. Comack's Motion to Dismiss or Convert

In its Motion to Convert or Dismiss, Comack asserts that Debtor's bankruptcy case should be dismissed with prejudice because it was filed in bad faith.[250] Alternatively, Comack asserts that Debtor's bankruptcy case should be converted to Chapter 7 because Debtor is liquidating rather than reorganizing.[251] Comack joined the United States Trustee's Motion to Convert, and requested the Court dismiss this case with prejudice as being filed in bad faith.[252]

For all of the reasons discussed *supra*, the Court similarly finds that Comack has met its burden to demonstrate cause to convert or dismiss for bad faith behavior committed by the Debtor during the pendency of this case. Also as discussed *supra*, the Court finds that conversion is in the best interests of creditors and the estate.

Accordingly, Comack's Motion is granted and, as discussed *supra*, this case will be converted to Chapter 7.

## D. Confirmation and related objections

---

[248] *See e.g.*, ECF No. 310.
[249] August 3, 2023 – Courtroom Hearing (Mario Rodriguez testifying).
[250] ECF No. 310.
[251] ECF No. 310.
[252] ECF No. 310 p. 5-6.

On June 29, 2023, Debtor filed its Fifth Amended Plan and now seeks confirmation from this Court. However, since this Court has already found cause to convert this case to Chapter 7, Debtor's Fifth Amended Plan[253] is not confirmed. Similarly, Sierra Title Plan Objection,[254] Comack's Objection,[255] the Objections to the Fifth Amended Plan,[256] and the UST Supplemental Objection,[257] are also overruled as moot.

Accordingly, confirmation of Debtor's Fifth Amended Plan is denied, and all Objections thereto, are overruled as moot.

## IV.   CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED September 22, 2023

Eduardo V. Rodriguez
Chief United States Bankruptcy Judge

---

[253] ECF No. 300.
[254] ECF No. 308.
[255] ECF No. 314.
[256] ECF No. 319-322.
[257] ECF No. 324.